**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| 1. ZACHARY L. BOWDISH, | ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CIV-17-1239-C |
| 1. THE G.W. VAN KEPPEL COMPANY, | ) ) ) ) | |
| Defendant. | ) ) | JURY TRIAL DEMANDED ATTORNEY LIEN CLAIMED |

## COMPLAINT

**COMES NOW** the Plaintiff, Zachary L. Bowdish, and for his Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff, Zachary L. Bowdish, is an adult male resident of Canadian County, Oklahoma.

2. Defendant, The G.W. Van Keppel Company, is an entity doing business in and around Oklahoma County, Oklahoma.

## JURISDICTION AND VENUE

3. This is a cause of action arising out of Plaintiff's former employment with Defendant and is based on the following claims: (a) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"); (b) retaliation for opposing unlawful discrimination in the workplace in violation of Title VII; and (c) wrongful discharge in violation of state law which prohibits terminating an employee for engaging in whistle-blowing activities.

4. Jurisdiction over Plaintiff's federal causes of action is vested in this Court under 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claim as it arises out of the same core of operative facts as the

1

federal claims and jurisdiction over it is vested in this Court under 28 U.S.C. § 1367(a).

5. Plaintiff has exhausted his administrative remedies as to the above-listed claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about March 29, 2017. Plaintiff received his Dismissal and Notice of Rights letter from the EEOC dated October 24, 2017 (received by Plaintiff by mail thereafter) and has timely filed this action within ninety (90) days of receipt of the notice of right to sue.

6. The Defendant is located in Oklahoma County and all acts complained of occurred in or around Oklahoma County. Oklahoma County is located within the Western District of the United States District Court of Oklahoma. Thus, venue is proper in this Court under 28 U.S.C. § 1391(b).

## STATEMENT OF FACTS

7. Plaintiff was born in 1961, making him over age 40 at all times relevant hereto.

8. Plaintiff began his employment with Defendant as a Service Manager, working at Defendant's Oklahoma City, Oklahoma branch office on or about March 30, 2015.

9. Throughout his employment, Plaintiff satisfactorily performed his job. At no time was he reprimanded or issued any written discipline.

10. Despite his stellar work record, Plaintiff was fired by Business Manager Rick Wood on or about February 9, 2017, just weeks after Plaintiff complained that Wood was engaging in unlawful conduct, including, but not limited to discriminating against and harassing employees based on their race and/or gender.

11. More particularly, when Plaintiff began his employment, his job duties included, among other tasks, conducting interviews, making hiring decisions and termination decisions for the Service Department. Yet, beginning in or around July 2016, Wood began

2

excluding Plaintiff from the interview and hiring process, completely bypassing Plaintiff starting in or around August 2016.

12. After Plaintiff was no longer included in the interview and hiring process, he began to notice that Wood, who is White, was not interviewing or hiring any Black individuals or other persons of color. And, Plaintiff understood that Wood fired one Black employee shortly before Plaintiff began his employment and another Black employee shortly after.

13. Plaintiff began questioning Wood about his hiring practices in or around August 2016, asking Wood why he was not hiring individuals of color. In response, Wood claimed "none applied." However, Defendant advertised position openings via various employment websites, including Indeed.com. In light of this and considering interviews were held for several positions, Plaintiff questioned the veracity of Wood's explanation.

14. As such, Plaintiff complained to Human Resources Director Kelly Wilcox about Wood's failure to interview and/or hire persons of color. Yet, no action was taken against Wood. Rather, Wood fired Plaintiff just weeks after his last complaint to Wilcox.

15. Plaintiff also began complaining to Wilcox in or around the Fall 2016 that Wood was harassing and discriminating against female employees.

16. For instance, Plaintiff overheard Wood repeatedly comment to female staff members, including but not limited to Julie Snyder and Brittany Hightower, who often wore pants to work, that women should wear dresses and get "fixed up" for work.

17. Wood also told Hightower that she should take over consignment sales, that customers (primarily men) wanted to buy from attractive women and if Hightower were flirtatious, she may increase sales. Wood also frequently told Synder (who was married) that his wife stayed at home, and asked Synder "shouldn't the wife stay home," fix dinner and get

3

"fixed up" for her husband.

18. Hightower and Snyder (both in their 20s) appeared stunned by the comments, saying nothing in response. However, upon inquiry, Snyder told Plaintiff that Wood's comments made her uncomfortable. As such, Plaintiff told Wood that his comments were inappropriate and caused female employees to feel uncomfortable. Yet, Wood's comments continued.

19. As such, Plaintiff complained to Wilcox in or around the Fall 2016 about Wood's gender-based comments. However, no action was taken against Wood.

20. And, during the company Christmas party (in December 2016), Wood read aloud, in the presence of female staff members, an article from the Internet that related to what was considered the ideal wife in the 1950s. Wood began the party (held at the worksite), by saying he read an article on Facebook and wanted to share it with the staff. The article detailed the ways "a wife should act," that the wife should have dinner ready, that the wife should freshen herself up before her husband arrives home from work and make the husband comfortable upon his arrival. Appearing uncomfortable and dismayed, there was no response to Wood's recital.

21. Following this incident, Plaintiff again complained to Wilcox about Wood's derogatory comments toward women. Yet, no remedial action was taken. Rather, Wood fired Plaintiff within weeks after his complaint.

22. Plaintiff was also fired after having refused to participate in certain illegal activities and complaining of various safety violations.

23. More particularly, beginning in or around July 2015 and continuing thereafter, Plaintiff began complaining to Wood at least once per month that Wood was unlawfully directing employees to operate company vehicles without possessing the appropriate license

for the class of vehicle being operated. However, Wood ignored Plaintiff's complaints, telling Plaintiff there were not enough qualified drivers, thus others had to drive despite not having the appropriate licence for the class of vehicle being operated.

24. Plaintiff further complained to Wood multiple times that hazardous waste materials were being improperly disposed of, that rather than the hazardous materials (including, but not limited to, oil and diesel) being properly contained and collected, the materials were being washed into the ground, creating a risk to the environment, as well as the health, safety and welfare of the public.

25. That is, Defendant maintained a catch basin in which hazardous materials drained. Within a few months after Plaintiff began his employment, Plaintiff called a recycling service to properly collect the hazardous materials from the catch basin which had become full. However, upon doing so, Wood chastised Plaintiff, angrily telling him that it cost too much to have the hazardous materials properly collected. Thereafter, Plaintiff complained to Wood on multiple occasions that the hazardous materials needed to be collected. Yet, Wood refused, causing the basin to overflow and the hazardous materials to get washed into the ground.

26. Additionally, beginning in or around July 2015 and continuing thereafter, Plaintiff repeatedly refused directives by Wood to engage in warranty fraud by submitting false information in connection with service warranty claims that Defendant submitted to Defendant's equipment suppliers. On multiple occasions, Plaintiff also refused Wood's direction to defraud customers, by *inter alia* failing to refund warranty monies and/or provide new replacement parts to customers based on service warranty claims that Defendant submitted to suppliers on the customers' behalf. Upon refusing to engage in such fraudulent activity, Wood told Plaintiff that he would handle the matter, excluding Plaintiff from the

warranty process.

27. Wood gave no reason for Plaintiff's termination. Rather, on or about February 9, 2017, Wood called Plaintiff (who was out sick that day), stating he was going to let Plaintiff go.

28. Plaintiff asked Wood the reason for his termination. Yet, Wood gave no reason, stating Plaintiff would have to ask HR.

29. As such, Plaintiff called Wilcox, asking why he was fired. However, Wilcox was not aware Plaintiff had been fired, let alone any claimed reason for his termination. Rather, Wilcox stated that she thought Plaintiff resigned.

30. Upon information and belief, Plaintiff was replaced by a significantly younger individual.

31. Moreover, approximately four (4) months after Plaintiff began his employment, Wood directed Plaintiff to terminate an older employee (believed to be in his late-60s/early-70s), who recently changed from full-time to part-time employment with Defendant. And, to Plaintiff's knowledge, there was no valid basis to terminate the employee.

32. Additionally, approximately three (3) to four (4) months after Plaintiff began his employment, Wood refused to give a high-performing, long-tenured, older employee (believed to be in his 50s) a pay increase, causing the employee to resign.

33. As a direct and proximate result of Defendant's actions, Plaintiff has suffered injuries described below.

## COUNT I: ADEA - Discrimination

For his first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

34. The matters alleged above constitute violations of the ADEA in the form of age

6

discrimination.

35. Plaintiff is entitled to relief under the ADEA because, at all times relevant to this action, he was over the age of forty (40), was qualified for his job, was discharged, and his position was not eliminated after his termination. Upon information and belief he was also replaced by a significantly younger individual.

36. As damages, Plaintiff has suffered lost earnings, past and future, and other equitable and compensatory damages allowed by the Civil Rights Act of 1991. Plaintiff is also entitled to liquidated damages based upon Defendant's willful misconduct.

## COUNT II: Title VII -Retaliation

For his second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

37. The matters alleged above constitute violations of Title VII of the Civil Rights Act of 1964 in the nature of retaliation for Plaintiff's opposition to unlawful discrimination in the workplace.

38. Plaintiff is entitled to relief under Title VII for retaliation because he engaged in protected activity (i.e., opposing unlawful discrimination in the workplace), he suffered adverse actions subsequent to the protected activity, and a causal link exists between the protected activity and adverse actions.

39. As damages, Plaintiff has suffered lost earnings, past and future, emotional distress and other equitable and compensatory damages.

40. Because the actions of Defendant was willful, wanton or, at least, in reckless disregard of Plaintiff's rights, Plaintiff is entitled to punitive damages.

## COUNT III: *Burk* Tort

For his third cause of action, Plaintiff incorporates all prior allegations and further

alleges and states as follows:

41. The acts above-described constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.

42. More particularly, Plaintiff was wrongfully discharged from his employment in retaliation for having refused to participate in illegal activities and complaining of various safety hazards in violation of Oklahoma law, including but not limited to Okla. Stat. tit. 47 §6-101 (making it a misdemeanor to violate the motor vehicle license provisions, including *inter alia* the provision prohibiting employers from permitting employees to operate motor vehicles without a license for the class of vehicle being operated); the Oklahoma Environmental Quality Act, Okla. Stat. tit. 27A §§ 1-1-102, *et. seq.*, and Oklahoma Solid Waste Management Act, Okla. Stat. tit. 27A §§ 2-10-101, *et. seq.* (making clear the public policy to protect the public health, safety and welfare, as well as the environment); the Oklahoma Service Warranty Act, Okla. Stat. tit. 15 §§141.1, *et seq*. (making it unlawful to engage in deceptive practices involving service warranties); the Oklahoma Consumer Protection Act, Okla. Stat. tit. 15 §§751, *et seq.* (making it unlawful to engage in deceptive practices involving consumer transactions, including those involving warranty claims); and the Fair Practices of Equipment Manufacturers, Distributors, Wholesalers and Dealers Act, Okla. Stat. tit. 15 §§244, *et seq.* (making clear that retail sales and rental of construction and industrial equipment – as sold and rented by Defendant – vitally affects the public welfare).

43. Plaintiff has suffered injuries and is entitled to recovery all damages or other relief allowed by state law, including but not limited to, lost wages (past and future), emotional distress damages, punitive damages, and attorney's fees and costs.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court enter judgment in favor of the Plaintiff and against Defendant and award compensatory damages, back pay, front pay, emotional distress damages, punitive damages, liquidated damages, together with any appropriate equitable relief, pre- and post-judgment interest, costs and attorney's fees.

Respectfully submitted this 17th day of November, 2017.

s/ Jana B. Leonard
**JANA B. LEONARD, OBA #17844**
**LAUREN W. JOHNSTON, OBA #22341**
**SHANNON C. HAUPT, OBA #18922**
**LEONARD & ASSOCIATES, P.L.L.C.**
**8265 S. Walker**
**Oklahoma City, Oklahoma 73139**
**(405) 239-3800 (telephone)**
**(405) 239-3801 (facsimile)**
**leonardjb@leonardlaw.net**
**johnstonlw@leonardlaw.net**
**haupts@leonardlaw.net**

**ATTORNEY LIEN CLAIMED**
**JURY TRIAL DEMANDED**